It's in the interest of Mazie B, a minor, in the interest of Mazie B, People v. Emily B and others, 518-0184 and consolidated 518-0291. Counsel ready? Okay, you may proceed. Thank you, Your Honor, and may it please the Court. My name is John Schmidt. I'm an Assistant Attorney General, and I represent the Department of Children and Family Services. I'm dividing time with Mr. Jarrell, who is the child's guardian of Lydom, and we both ask for reversal of the circuit court's order, granting the state's motion for voluntary dismissal of the neglect proceeding, and remand for further proceedings that would include a hearing. And our argument is relatively straightforward. It's based on the requirements of the Supreme Court's decision in In Re. J.J. The Supreme Court held in J.J. that the circuit court, when it's faced with a motion from the state to voluntarily dismiss, in that case it was an abuse proceeding, that it cannot grant the motion unless it makes a written finding that granting the motion would be in the minor's best interest. It also must consider the merits of the motion, and we believe, too, that the language of J.J. requires a hearing. First of all, the court cited with approval language from the appellate court's decision saying that a hearing would be necessary in order to enable the court to fulfill its parent's patria role, and that again was cited with approval. And on page 11 of the J.J. decision, the court said after hearing the evidence, if the circuit court determines in the exercise of its discretion that the best interests of the minor will be served by dismissal of the petition, it should allow the state's motion to dismiss. But if it determines that the best interests of the minors will not be served by the dismissal, the state's motion shall be denied. So we believe that language indicates that a hearing was required. Here, of course, there was no hearing. There was no finding regarding whether dismissal would be in the minor's best interests either, and to make it worse, there was no service on the parties, and the court granted the motion the day it was filed. So DCFS, the guardian ad litem, had no chance to respond at all. Their subsequent motions to reconsider were denied, and we believe in this case J.J. requires a remand for the circuit court to conduct a hearing and determine whether dismissal would be in the minor's best interests. What about Mr. Blood's argument that that hearing that took place on the stay essentially covered those bases? I don't believe that it did, Your Honor. The hearing was held before the motion to dismiss was filed, three days before, I believe. And that hearing was on a motion to stay the proposed transfer of the child from the Hensies to the Bennetts. DCFS had planned to transfer the child, and the Hensies asked for a stay pending their administrative challenge to DCFS's placement decision. In other words, they were asking DCFS to conduct what was called a clinical placement review. So a very brief hearing was held. The court granted the stay, but in the order of granting the stay, the court recognized the temporary nature of the relief. It said that the status quo should be preserved while the Hensies are pursuing the administrative appeal. Here, the dismissal of the action in its entirety has far more drastic consequences than that motion did. So we believe there should be a new hearing, or another hearing, specifically geared toward the motion to dismiss. The granting the motion to dismiss takes DCFS out of the case. And the motion to dismiss was really, and I think the state admits it, it was designed to allow the Hensies' planned adoption to go through. And if that adoption goes through, they in effect become the child's parents. They can prevent the child from seeing her half-sister. And we think that would be a, so there are some potentially very big consequences that we think should be examined at a hearing. And that's all we're asking for. We're asking for a remand for the court to conduct a hearing and to make the appropriate best interest findings in connection with this motion. The state also argues, and there are a number of arguments raised by both the Hensies and the state. I'm just in this opening going to deal with one more, and that's that JJ is distinguishable on its facts. And the facts are somewhat different, but we believe JJ does create a bright line rule. JJ was not depending on the particular facts of the case. And JJ also, the Illinois Supreme Court, JJ expressed a concern that if the circuit court automatically dismissed the state's petition, that if the abuse in the case continued, the child would be dependent on the state to refile the petition. The court could not intervene unless that was done. You have some potential for the same situation here. And I'll concede that it's not likely, but there's some potential. If for some reason, and hopefully this would not happen, but if the Hensies had to back out of the adoption, what the circuit court has done would place, would create a situation where the mother's parental rights have not been terminated yet because her surrender is contingent on the adoption going through. So you would have the mother's parental rights not terminated and a neglectful mother still with existing parental rights, which would still not be a good situation. So some of the concerns of the JJ court would still potentially be present here, we believe. And the Hensies also raise an argument that a provision, and I believe it's section 5, parenthesis L-1 of the Children and Family Services Act, would indicate that permanence governs over the interests of siblings here. We don't believe that's the case. We think that statute only requires DCFS to make plans regarding the child with permanence in mind. But it does not cancel the requirement of another part of the Children and Family Services Act, the standard that children are generally placed with a sibling unless this is not in their best interests. So we would ask again that for a remand for a hearing where anyone could present evidence and with the hearing geared toward whether dismissal of the case would be in this child's best interests. And we believe that is required by the Supreme Court decision in JJ. Thank you very much, Your Honors, and I'll let Mr. Gellar proceed.  I agree with Mr. Schmidt's assessment of the situation. I would further note that the… You are the GAL? Yes, I'm sorry, Your Honor. I was the guardian ad litem in my capacity as assistant public defender in Edison County. I represented the child as a guardian ad litem in… What's your name? Dylan Gellar. Sorry. And now I am appealing on behalf of the minor. I would agree with Mr. Schmidt in his assessment of what's happened. Also, the consent that mother did sign is already void in my opinion. The specific…the form that she filled out says that the specific consent will become void if the DCFS guardianship administrative refuses to consent to your child's adoption by the specified person or persons on the basis that the adoption is not in your child's best interest. The DCFS guardianship administrator is not going to consent to the adoption. The DCFS is no longer even involved in the case. So the consents are not valid. If the Hensies do not adopt, then there's no backup plan. There's no safety net, which there would be if the court would have let the state's juvenile petition open. And there was no hearing on the matter. I know that Mr. Blood and the state's attorney have said in their briefs that there was a hearing, that the hearing three days before the state filed the motion and the court granted the motion was a best interest determination. And again, if it was not…had it been a motion…had that hearing been on the motion to dismiss the state's petition, I would have called the sibling's adoptive parents. I would have called the caseworker that was involved in the sibling's case. I would have potentially called the sibling to testify in that hearing. The court did not hear from any of those people because there was no reason to call any of those people at the hearing that was held on March the 12th. That hearing was just to determine whether the DCFS decision to remove the minor right away would be stayed until the Hensies were able to appeal that decision. That's the only thing that the hearing was to determine. That's the only thing that the hearing did determine. That's what the court order reflects. There's nothing in the court order of March 15th suggesting that the court considered a best interest. The order says state's motion for voluntary dismissal without prejudice is granted this date. No further settings. Clerk to close file. Nothing on the record there about any best interest finding how this would affect the child, how this would affect the community, how this would affect anyone else involved. Just the state's motion to dismiss this petition is granted. Also there's been put forth an argument in an opposing counsel's brief that, excuse me I'm drawing a blank. Anyway, Emory J.J. is very clear in that the Supreme Court said that we hold that when the state moves to dismiss a petition alleging abuse of a minor, the circuit court shall consider the merits of the motion and determine on the record whether dismissal is in the best interest of the child. In the best interest of the minor, the minor's family and the community. That's the holding of the Illinois Supreme Court. The facts of this case are not substantially distinguishable from that. This is a case where the court had a motion in front of it to dismiss the state's petition and should have followed the guidelines of the Supreme Court and they did not. During the hearing the court asked the state's attorney if she could dismiss her petition. The state's attorney said that she could but that was not the judge suggesting that she do that, that was the judge asking a procedural question. He had been a judge on the juvenile court for five months, didn't know what was going on so he asked the state's attorney who had been doing the juvenile court for about 18 months if she thought that she had the authority to dismiss the petition on her own. She believed that she did. I explained to everyone after the hearing was over off the record that that's not the case, that there has to be a hearing. And then I found out the following week, three days after the petition was, the state filed a motion and the motion was granted. There is no hearing. Thank you. May it please the court. Counsel. Jennifer Camden on behalf of the people. The appellees will also be splitting their time. I'll first address the notice issue. The appellants both argue that they've met the burden of showing a real and actual prejudice stemming from the lack of notice of the motion to dismiss based on the same evidence. There's also the same theory, which is that dismissal of the neglect proceedings prejudiced the child because the neglect proceedings would have considered and protected her interest in a sibling relationship. And the response to that argument is that all of the child's interests, including in a sibling relationship, will be and are protected by the circuit court in adoption proceedings, which as the record shows were separately pending during most of the proceedings below and remain pending following the dismissal of the petition here. And that issue of the sibling relationship can and should be considered in that forum using evidence, not here via speculation regarding the sibling relationship. Just as in the neglect proceedings, the best interest of the child is paramount in adoption proceedings. And the appellants are not contending that the adoption proceedings are inadequate in any way for as a forum to explore that issue and to safeguard that interest. And if the court decides that the adoption by the Hensies is not in the child's best interest for any reason, the court can reject it. And at that point, the state can renew its neglect petition, which was dismissed without prejudice. I'd also note that DCFS in December 2017 affirmatively waived the so-called six-month provision allowing the birth mother to sign a final and irrevocable consent to adoption by the Hensies. So DCFS can hardly complain now that adoption might impair a sibling bond after having affirmatively acted to hasten that adoption. What about the contention that the direct consent is not valid since DCFS has failed to consent? Well, Your Honor, I'd note that the record reflects that the birth mother signed consents in both proceedings, in the neglect proceeding and also in the separate probate proceeding through which the Hensies were granted custody on the same day that the circuit court dismissed the neglect proceeding. So she consented in both cases, in both forums. On the JJ issue, JJ does not require a hearing on the state's motion to dismiss an abuser neglect petition. It requires the court to consider the merits of motion to dismiss in the best interest of the child instead of, as occurred in JJ, automatically granting a state motion to dismiss based on a circuit court's erroneous belief that it had no discretion to deny it under the separation of powers doctrine. In this case, the circuit court's dismissal order did not indicate that it granted the state's motion based on that erroneous belief. So it's presumed not to have done so. It's presumed to have considered the motion to dismiss on the merits, and it's presumed to have considered the best interest of the child. The state's motion to dismiss sought dismissal on the grounds that further monitoring of the case wouldn't further the best interest of the child, and in granting it, the court's presumed to have agreed. Now, the Supreme Court did assume that a circuit court could only gather information relevant to best interest at a hearing on the motion to dismiss. But this case is unique because there was a hearing just three days prior at which the circuit court heard evidence that would have been required to consider the merits of the motion to dismiss. I'd note that the main information elicited at that hearing, or among the main information, was the series of events that led to the apparently mistaken filing of the neglect petition in the first place, a series of events explained in the state's answer briefs. The JJ case was designed to ensure that the state didn't unilaterally, via an unexpected motion to dismiss, return children to potentially abusive parents. But in this case, the motion to dismiss was, as the state reads the record, suggested, invited by the circuit court, and the dismissal would not have resulted and did not result in the return of the child to potentially abusive or neglectful parents, but rather would have permitted the adoption to proceed on the separate track that it was proceeding on. It seems like the argument of counsel on the other side is they had an expectation of a hearing. You mentioned unexpected. Well, we had a hearing three days. But the GAL has mentioned, hey, no motion's been filed. We'll have a hearing. And that didn't happen. And normally, due process requires a hearing no matter what type of case it is. Why is this case different? Your Honor, the, again, JJ doesn't require a hearing. It requires a consideration of the motion on the merits. And the lack of a hearing, I think, dovetails with the lack of notice requirements and goes to the prejudice argument, whether the defense, whether the appellants can show prejudice resulting from that. And here, the appellants, I would argue, have not met that burden, where the result of the dismissal is that the child's interest will be considered in adoption proceedings rather than in neglect proceedings. And I'd also note that, and the appellants haven't posited why that is insufficient in any way. I'd also note that denying the motion to dismiss would have required the state to continue trying to prove the birth mother an unfit parent, even though she'd already signed adoption papers in both proceedings and didn't even have a DCFS service plan. Meanwhile, denial of the motion would have prolonged the time that the child was remaining in the custody of DCFS, even though the Hensies were ready to adopt. Well, I think they were just asking for a hearing. Obviously, you know, it sounds like the position would be they would be asking for denial, but you've got to have a hearing first in most cases. Right. Again, Your Honor, the response would be the response to the prejudice argument, and the state adopts its arguments regarding prejudice as to the notice issue with regards to prejudice as to the hearing issue. And with that, I should turn the time over to my colleague. Thank you. Thank you, Your Honor. May it please the Court. For the audio record, my name is Curtis Blood. I represent Brady and Andrea Hensie, the foster parents of the child. If I could answer the questions first. Justice Moore, the argument we heard about the consent being void, I never heard that before, just now when you did it. It's not in the briefs. We'd have loved to have addressed it if we'd have heard it before now, but we didn't. So raising it now is a violation, a direct violation of Rule 341H and Force 7. It's waived. Justice Overstreet, on the question, I think the question was done, due process require a hearing. And we maintain they had a hearing. They had a long hearing. They had a hearing at which four witnesses testified and at which the judge expressed what he expected to do. We, to the extent that they deserved a hearing, they had a hearing. I would like to call your attention to the DCFS motion in that regard. And the DCFS motion to dismiss, which, by the way, before I get on my main track, says, and this is at C-61, that pursuant to DCFS Rule 315 regarding permanency, the Department recognizes the best interest of the children required that they have safe and permanent homes and that it must make a reasonable effort to find permanent homes. And another rule that they quote in the same motion to dismiss the state's petition, they say, quote, specifies that one of the permanency goals set by the court is adoption. That was right in the DCFS motion in December. Permanency, adoption, just what we're arguing now. But I want to talk some more about the DCFS motion to dismiss the state's petition. Now, it was on file in December. This hearing was in March. In December, the circuit court denied DCFS's motion to dismiss the state's petition. On the same day that it was filed. Now, you're saying DCFS filed a motion to dismiss? Filed a motion to dismiss to do exactly what we're here, what they're here appealing today. Exactly the same relief. Exactly the same relief. Please dismiss the state's petition so that the adoption can go through and achieve the goal of permanency. Yes. What happened? In the intervening three months. Yeah, yeah, yeah. What happened? Indeed, what happened? It wasn't until March that we see, well, February, that we see this all of a sudden. All of a sudden, things have changed. It's like they're watching the World Series and they're challenging this call. Wait a minute. They're looking at the films in New York to see if it's a foul ball. This is not baseball. This is a child's life. And this child, DCFS let this child go to Greg and Andrea, the only parents this child has ever known, in October. And all of a sudden, in February and March, we're asking for a replay. We're like, wait a minute, wait a minute. Now, all of a sudden, adoption's not such a good idea. Now, maybe we should take another look at the sibling. A half-sibling, by the way. Maybe we should take another look at the half-sibling. Wait a minute. And that is the super fact in this case because the trial judge commented on that. He said, in my opinion, DCFS sat too long on its roost. That's the trial judge's words. Four months later, what's going on? You can't just do that now. And, of course, now, oh, by the way, and this is not just to be nice, congratulations to my clients on the child's first birthday and also first anniversary of them having foster care of the child, the only, again, the only parents this child has ever known. And like the judge said, that is mostly due to the fact that DCFS didn't reverse its course until four months in. Four months in. Four months, that child is waking up to one mother and one father. And now, they've got a better idea. Well, let's get it replayed. Let's snatch this child away. It's too late. And that's the best interest determination that this judge made. He heard all this. And he called DCFS on it. Counsel for DCFS. Isn't it true? Isn't it true? The DCFS sat on this for four months before they thought to complain about this? And, by the way, JL didn't complain about it either. And DCFS counsel's response was, well, that's what the testimony was, Your Honor. It's too late for backsies. It really is too late. And the judge saw that. He heard the testimony of the four witnesses. He heard the claim about the sibling placement being Uber Wallace. And he said, no, no, from what I'm hearing, that's just not so. From what these witnesses told me, that's just not true. Well, my question is, how does a motion for stay hearing substitute for the hearing called for in Henry J.J.? Let's assume, Your Honor, that, well, it's true. You'll have to assume it. A motion for dismissal by DCFS of the state's petition is denied. It's denied. The law is clear. I cited two cases on it. That the trial judge can change his mind. He can change his mind on that ruling he just made. He can turn around tomorrow and dismiss that petition that he's just refused to dismiss. That's his authority. We don't put the trial court in straitjackets. We let them do what they think is right. And I cited two cases on that, in my opinion. But I could have cited 20. And the judge can do it on motion of the party. He can do it sur la sponte. He can just decide it's the right thing to do. He can read the newspaper, watch TV, get an idea, realize he didn't make the right judgment, and change it. So the trial judge could change that judgment the day after he made it. He said, I'm not dismissing. The next day he could have come back in and said, I was wrong. I'm dismissing. He could have said that before the March 12th hearing. He could have said it during the March 12th hearing. He could have said it after the March 12th hearing. He could have said it any time before final judgment. And in this case, he said it in open court. All the parties listening. He said to the assistant state's attorney, look, can't we just dismiss this now? And the assistant state's attorney said, that's what the state would like. Why didn't the judge? That was a big question in my mind, rhetorical question. Why didn't the judge say, all right, it's dismissed. Why didn't the judge do that? And it took me a while to realize. He had his assistant in front of him. He did not have the state's attorney in the courtroom. And associate judges are smart enough to know that you don't step on the state's attorney's toes for no good reason. You just wanted the state's attorney committed in print. Which was then done, and he granted the motion. That's why it wasn't granted on the spot. But the trial court had the authority to grant it on the spot. We're out of here. Now, we cited two cases in our brief on the subject of the trial court having authority to change his ruling. And one of those says, I want to get this right. This is the Supreme Court, People v. Enis, E-N-I-S. A trial court retains jurisdiction to reconsider an order it has entered as long as the cause is pending before the trial court. May I? The trial court's power to modify its rulings does not imply that the court is obligated to hold an additional evidentiary hearing in all instances. End of quote. That's our Supreme Court. All right. Thank you, counsel. Thank you. Rebecca? Thank you, Your Honor. Well, Mr. Blunt says he could have cited 20 cases. If he could have cited 200 cases on that point, it doesn't matter because the trial court didn't grant DCFS's motion. And the trial court was aware at the time it granted the motion that DCFS had changed its position and was seeking to place the child with the Bennetts. So the trial court was well aware that DCFS did not want the case dismissed at the time. So DCFS did file a motion to dismiss, and we acknowledge that in our briefing. They filed it in December, but they did reconsider and determine that because of the importance of the sibling relationship, the child should be placed with the Bennetts. Now, Your Honors, whether you believe that DCFS should have acted sooner or should have implemented that desire sooner, the matter remains that the procedures that are set forth in the JJ case are designed to protect the children. And those procedures should still be followed. It's not a matter of the Hensies are going against DCFS and DCFS didn't act promptly enough, so they win. That's not how this type of case is supposed to work. The court has to make determinations based on its judgment of the child's best interests and has to follow the procedures that are outlined in the Juvenile Court Act and in the Supreme Court's decision in JJ. The state mentions that it argues that there's a presumption that the court considered the child's best interests. JJ doesn't allow that presumption. JJ requires the finding to be in writing. And again, that is to protect the child. Mr. Blood mentions that the child has been in the custody of the Hensies now for about a year. That is absolutely correct. The child has been in their custody. That is certainly a matter that the trial court can consider when it does hold that hearing. If there is a remand, if this court decides to remand, if the trial court then holds its hearing, that is a matter the court can consider in determining the child's best interests. But still, JJ requires that best interest hearing. And Mr. Jarrell showed me a portion of his opening brief in which, I'm sorry, his opening reply brief. Mr. Jarrell filed two reply briefs because these are two consolidated cases. But in the reply brief in his first case, he mentioned the argument about the mother's final and irrevocable consent to adoption on page 7. So that argument was not waived. It has been made. Again, we would ask this court to reverse and to remand based upon a failure to follow the procedures in JJ. And we believe a reading of the language on pages 10 and 11 of the decision would also require a hearing consistent with what the Supreme Court described as the circuit court's statutory duty to gather information bearing upon the condition and future welfare of persons subject to the act. And that requirement is found in section 1-2 of the Juvenile Court Act. And for the reasons that we've stated in our opening argument and in this argument, again, we would ask for reversal and remand for a hearing and for a finding regarding the child's best interests. And I thank the court very much for its time. Thank you, counsel, for your arguments. The court will take this matter under advisement and render a decision in due course.